# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**UNITED STATES OF AMERICA**

v.                    **ELECTRONIC CRIMINAL COMPLAINT**

**CLYDE EDWARD REEDER**       CASE NUMBER:   MJ-25-04090-001-PCT-CDB

I, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about June 19, 2024, in Yavapai County, in the District of Arizona, the defendant, **CLYDE EDWARD REEDER**, did knowingly, intentionally, and unlawfully possess a controlled substance, that being fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 844(a).

### COUNT 2

On or about June 19, 2024, in Yavapai County, in the District of Arizona, the defendant, **CLYDE EDWARD REEDER**, did knowingly, intentionally, and unlawfully possess a controlled substance, that being methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 844(a).

I further state that I am a Police Officer with the Department of Veterans Affairs Police Department, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.**

Rochair Jenkins, Criminal Investigator, VAPD
Complainant's Name and Title

Complainant's Signature        Date: 03/13/2025

X  Sworn by Telephone

March 14, 2025
Date/Time

Flagstaff, Arizona
City and State

Camile D. Bibles. U.S. Magistrate Judge
Name & Title of Judicial Office

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.03.14 12:35:37 -07'00'
Signature of Judicial Officer

- 1 -

**CC: USM & PTS**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

### ELECTRONICALLY SUBMITTED AFFIDAVIT

I, VAPD Criminal Investigator Rochair Jenkins, state under oath as follows:

1. I am a Criminal Investigator at the United States Department of Veterans Affairs Police Department (VAPD) at the Bob Stump VA facilities in Prescott, Arizona. I have over five years of law enforcement experience with the VAPD. I retired from the Omaha Nebraska Police Department after 25 years of service. I am currently assigned to investigate crimes within the confines of VA property in the District of Arizona.

2. This affidavit is based on the investigation, observations, and/or experience of your affiant and/or other law enforcement officers and/or witnesses, including those described in this affidavit. Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation.

### Introduction

3. This case involves the unlawful possession of controlled substances, fentanyl and methamphetamine, both Schedule II controlled substances, by Clyde Edward Reeder (REEDER), which occurred on June 19, 2024, in Yavapai County, in the District of Arizona. The unlawful possession of a controlled substance occurred at the Northern Arizona Veteran Affairs Healthcare System (NAVAHCS)

campus, located at 500 North Hwy 89, Prescott, Arizona, in the District of Arizona. The NAVAHCS provides direct health care services to thousands of people per year. The NAVAHCS primarily provides services to Veterans and active-duty personnel.

4. REEDER is a Veteran. The incident occurred while REEDER was in inpatient treatment at the Domiciliary at the NAVAHCS.

## Investigation/Probable Cause

5. The initial report of this incident was taken by VAPD Police Lieutenant Gilbert Herrera and VAPD Police Officer Kendahl Chambers. As part of my investigation, I also spoke with both Lt. Herrera and Officer Chambers.

6. In summary, based on my investigation and the information provided to me by Lt. Herrera and Officer Chambers, the following was learned and/or occurred:

   a. On June 19, 2024, at approximately 2225 hours, Domiciliary staff reported to the VAPD that they had been notified by another Domiciliary resident of the smell of smoke. The staff then conducted rounds to investigate where the smell was coming from. The staff could smell the smoke coming from rooms C118 and C119. The staff identified room C118 as being occupied by Veteran Jamiah Ming (MING), and C119 was occupied by REEDER.

   b. The Domiciliary staff entered MING and REEDER's rooms, which are connected by a common bathroom. In room C118 (MING's room), the staff found an Apple iPhone box with six pills in it that were believed to be a

controlled substance.[1] There was also a piece of aluminum foil with suspected drug residue on it located in room C118.

       c.     The staff then went to room C119 where they found two pills on a table, a white pill with the number 144 on it, and a tan pill. (Based on my research, the white pill with the number 144 was likely Bupropion, an antidepressant. It was unknown what was in the tan pill. REEDER later denied that these pills were his.)

       d.     The Domiciliary staff conducted a search of room C119's wall locker; this was REEDER's locker in his room. Inside the locker they located a container with approximately 68 blue pills in it. The pills had the imprint "M 30" on them. A small amount of suspected methamphetamine – approximately 2.94 grams with packaging – was also found in REEDER's locker. It should be noted that even though the rooms are connected with a bathroom, each room has a locker that is controlled by that occupant. Thus, REEDER was the only Domiciliary resident with a key to this locker.

       e.     When Domiciliary residents check into the Domiciliary for treatment, they are giving a Domiciliary Residential Treatment Handbook that explains the

---

[1] It was later learned that the pills were Suboxone, and that MING had a prescription for them. (Based on my research, Suboxone contains a combination of buprenorphine and naloxone. Buprenorphine is an opioid medication, sometimes called a narcotic. Naloxone blocks the effects of opioid medication, including pain relief or feelings of well-being that can lead to opioid abuse.) However, MING was not supposed to have possession of those pills in his room. Thus, it was learned that he was hiding the pills and taking them in contravention of Domiciliary policies.

rules and expectation of what they can do and cannot do while in treatment. It also explains the rights that they are giving up while assigned to the program. One of those rights they sign and acknowledge is that Domiciliary staff can conduct room checks and searches for contraband.

f. Upon their arrival to the Domiciliary, Lt. Herrera and Officer Chambers were provided the foregoing information by H.K. and J.W., who are Domiciliary staff members for the VA. The officers took the suspected drugs into evidence.

g. Officer Chambers took REEDER into custody. REEDER was taken to the VAPD Headquarters, which is across the street from the Domiciliary.

h. Officer Chambers conducted a search of REEDER prior to questioning. REEDER was asked whether anything was missed during the search, and REEDER advised that he had missed an item in a small pocket. Officer Chambers checked the pocket, and he found a straw with a blue pill in it that matched the pills found in REEDER's wall locker. (The blue pill was suspected fentanyl.)

i. REEDER was read the Miranda warning and agreed to speak with Officer Chambers. REEDER was questioned and denied that the pills found in his room were his. (Again, it should be noted REEDER was the only resident of the Domiciliary with a key to the locker in the room in which he was staying.)

j. Lt. Herrera arrested MING and transported him to VAPD headquarters.

k. MING was advised of the Miranda warning, and he said that he was willing to answer questions. MING admitted that the items in his room were

prescription medications. When MING was asked about the suspected drugs found in REEDER's room, he denied any knowledge that they were there.

l.     Lt. Herrera and Officer Chambers eventually released MING and REEDER from custody.

7.     On July 29, 2024, at approximately 0830 hours, I signed out the 68 blue pills that were found in REEDER's room from evidence and transported them to the Arizona Department of Public Safety (DPS) Lab in Phoenix Arizona for testing. On August 6, 2024, I received the results of the test. The suspected drugs field tested positive for fentanyl, a Schedule II controlled substance. The DPS lab later advised they would do a further analysis of the pills when a trial date is set.

8.     On August 7, 2024, at approximately 1100 hours, I signed out the clear plastic baggie containing a clear like substance, two pills one white in color and the other tan in color with an oval shape, a red in color straw and a blue in color broken pill from evidence and transported the items to the Arizona Department of Public Safety (DPS) Lab in Phoenix Arizona for testing. On January 19, 2025, I received the results of the test. The clear crystal substance tested positive for a usable amount of methamphetamine. The white pill tested positive as a prescription containing bupropion, and the tan pill tested positive for a prescription containing naltrexone. The broken blue pill tested positive for fluorofentanyl, a fentanyl mimetic substance and fentanyl, each being a narcotic drug.

## Conclusion

9. Based on the forgoing, I believe that there is probable cause to support that CLYDE EDAWARD REEDER committed violations of federal law, in that he unlawfully possessed controlled substances, fentanyl and methamphetamine, Schedule II controlled substances, in violation of 21 U.S.C. § 844(a).

10. It is respectfully requested that a warrant be issued for REEDER's arrest.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March _13_, 2025

Rochair Jenkins Criminal Investigator.
Dept. of Veterans Affairs Police Dept.

_X_ Sworn by Telephone

Date/Time: March 14, 2025

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.03.14 12:34:59 -07'00'

Camile D. Bibles
United States Magistrate Judge